```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

TERRI J. PRICE,

    Plaintiff,

v.                             Civil Action No. 2:16-cv-1529

REGION 4 PLANNING AND DEVELOPMENT
COUNCIL, and JOHN F. TUGGLE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are the plaintiff's Supplemental Motion for Summary Judgment, filed December 5, 2018, Motion for Leave to File Supplemental Motion for Summary Judgment, filed January 2, 2019, and the defendants' Motion to Strike Plaintiff's Supplemental Motion for Summary Judgment, or in the Alternative, Response in Opposition, filed December 19, 2018.

In her supplemental motion, Price moves for summary judgment on her theory that Tuggle was never the Executive Director of Region 4 Planning and Development Council ("Region 4") because his appointment was not properly "ratified." As a result, Price asserts that Tuggle lacked authority to terminate her employment, rendering her discharge invalid, and seeks "immediate reinstatement" to her former position at Region 4.

Pl.'s Supp. Mot. Summ. J. at 7.  Although the subject matter of the plaintiff's supplemental motion for summary judgment is not alleged in her complaint, and although the motion is untimely, the court will nevertheless address it to the extent that follows.  The factual background at issue is fully developed in the companion order entered today in the above-styled civil action.

West Virginia Code § 8-25-1 et seq. provides for the creation of Regional Planning and Development Councils in West Virginia, including defendant Region 4.  Section 8-25-6(c) specifically provides, in pertinent part, that each Council "shall select . . . an executive committee which shall . . . perform such administrative duties as are prescribed by the regional council in its bylaws."  Section 8-25-6(d) states that "[e]ach Regional Council shall establish personnel rules and shall appoint a director" who is "empowered to appoint and remove other employees in accordance with the regional council's personnel rules."

The bylaws of Region 4 provide that the Executive Committee "shall select and appoint a qualified person to serve as the Executive Director of the Council" and that the "appointment of the Executive Director shall be ratified by the

general membership at the next available Council meeting." See Article VIII, § 8:01, Pl.'s Supp. Mot. Summ. J. at Ex. B.

The meeting minutes ("Minutes") of the Special Executive Committee meeting held on September 4, 2013 show that John Manchester, Chairman of the Region 4 Council and Executive Committee member, was authorized by the Executive Committee to hire defendant Tuggle as Executive Director, effective October 1, 2013. Pl.'s Supp. Mot. Summ. J. at Ex. E. The Minutes of the Executive Committee meeting held on September 18, 2013 reflect that Tuggle was introduced as the person "recently selected to precede [sic, succeed] W.D. [Smith] in his role as Executive Director." Id. at Ex. F. The "next available meeting" after the Executive Committee authorized the hiring of Tuggle was an October 16, 2013 "dinner celebration of the retirement of . . . Smith." Id. at 5-6.

Plaintiff is of the position that, "[i]n the case of John Tuggle . . . the required appointment by the full council membership never occurred." Id. at 5. In support thereof, she claims that "(i)f the minutes do not show a vote [by the general membership] authorizing an action, then the Board [sic, Executive Committee] necessarily has not taken any action at all." Id. at 6 (emphasis in original). Noting that the October 16, 2013 Minutes do not reflect "any motion having been made to

3

ratify the Executive Committee's hiring of Mr. Tuggle, and do not document any action confirming or appointing him as Executive Director," Price concludes that "Tuggle was never properly appointed as the Executive Director." Id. at 6. Inasmuch as Tuggle is a "public official" who is "only authorized to act within his or her statutory authority," plaintiff asserts that his defective appointment "deprived him of any authority to act in any capacity," which caused his "purported termination" of Price to be void. Id. at 6-7 (emphasis in original).

On the other hand, the defendants maintain that Region 4 Council properly ratified Tuggle's appointment, in that an agreement, "such as the employment agreement the Executive Committee made with [] Tuggle, can be ratified implicitly by accepting benefits of an action with full knowledge of the terms." Defs.' Mot. Strike 11 (citing Syl., Payne Realty Co. v. Lindsey et al., 112 S.E. 306 (W. Va. 1922)). Alternatively, they claim that Region 4 Council "explicitly and implicitly" ratified Tuggle's appointment at the October 16, 2013 dinner meeting, inasmuch as the Agenda for that meeting reflects that Region 4 Council was to remove Smith from "Region 4 Accounts," understood to be financial accounts, and replace him with Tuggle. See id. at Ex. A.

Independently of the foregoing, defendants also find Region 4 Council approval of the hiring of Tuggle in a resolution issued by the Council on July 16, 2014, which states:

> NOW THEREFORE BE IT RESOLVED, that Region 4 Planning and Development Council <u>hereby concurs with and approves the actions, decisions, and performance of the Executive Committee for Fiscal Year 2013/2014.</u> I, John Manchester the duly elected Chairman of the Region 4 Planning and Development Council, do hereby certify that at a meeting of the Region 4 Planning and Development Council, duly and [sic] held pursuant to the said organization's By-Laws, on the 16th day of July, 2014 upon motion made, seconded, and <u>adopted by a vote</u> of 14 to 0, this Resolution was adopted.

<u>Id.</u> at Ex. B (emphasis supplied). One of the actions taken by the Executive Committee during the 2013/2014 Fiscal Year was to hire Tuggle as Executive Director. The defendants contend that, inasmuch as Region 4 adopted, by a vote, the actions, decisions, and performance of the Executive Committee during the 2013/2014 Fiscal Year, which included the hiring of Tuggle, the "latest possible date" that Tuggle's appointment could be considered defective is the date of this resolution, July 16, 2014 – six months before Price's discharge. <u>Id.</u> at 12.

For all of the reasons advanced by the defendants, the court concludes that Tuggle's appointment as Executive Director was duly ratified by the Council.

Moreover, technical defects do not render acts of an agency or its officials void, inasmuch as the acts of a <u>de facto</u>

5

officer, as to the public and third parties, are valid as if he or she were a <u>de jure</u> officer. <u>See</u> Defs.' Mot. Strike at 9 (citing <u>Odom v. Partners for Payment Relief, DE III, LLC</u>, 2015 WL 3676713, at *5 (W. Va. 2015)).

Under West Virginia law, the "acts of a <u>de facto</u> officer, as to the public and third persons, are as valid as if he were a <u>de jure</u> officer." Syl. pt. 4, <u>Stowers v. Blackburn</u>, 90 S.E.2d 277 (W. Va. 1955). An individual is a <u>de facto</u> officer "when he is in possession of an office and discharges its functions under color of authority." <u>Id.</u> at Syl. pt. 3.

In <u>State ex rel. Hayden v. Wyoming County Correctional Officer Civil Service Commission</u>, 412 S.E.2d 237, 238 (1991), the plaintiff, Hayden, argued that all actions taken by the Civil Service Commission – particularly, the certification of a list of potential candidates for a correctional officer position - were void because the Civil Service Commission was not properly constituted. The Civil Service Commission was organized pursuant to the provisions of W. Va. Code § 7-14-B1 <u>et seq.</u>, which provided for the creation of a civil service system for the selection of correctional officers in West Virginia counties with a population of 25,000 or more. <u>Id.</u> at 239. One duty of the Civil Service Commission was to determine the eligibility of candidates for the position of correctional

officer.  Id.  Pursuant to W. Va. Code § 7-14B-3, no more than three members of a commission could be of the same political party.

When the sheriff of Wyoming County requested a list of eligible candidates for an opening for a temporary correctional officer position, the Civil Service Commission was inadvertently composed of four Democrats and only one Republican. Nevertheless, the Civil Service Commission certified a list of eligible candidates for the opening, which did not include the plaintiff.  The plaintiff, of course, was not considered for appointment as a result.  Id.  Claiming that the defect in the political composition of the Civil Service Commission's membership rendered the creation of the list invalid, Hayden filed a writ of mandamus seeking back pay, seniority rights, and a new hearing.  The circuit court held that, because the Civil Service Commission did not comply with W. Va. Code § 7-14B-3, its actions taken during the time at issue were invalid.  Id. It awarded the plaintiff with back pay from the date of the appointment that he was not able to obtain, and ordered the Civil Service Commission to place Hayden's name on the list of eligible candidates.  Id.

Upon appellate review, the Supreme Court of Appeals reversed the decision of the circuit court, and found that the

Civil Service Commission's failure to comply with the West Virginia Code did not render its acts void as a matter of law, inasmuch as a "rather substantial body of law in West Virginia indicat[es] that acts of de facto officers are valid so far as the public and third persons are concerned." Id. The court cited the definition of de facto officer from Stowers v. Blackburn, see supra, but more thoroughly explained the definition as follows:

> An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the officer were exercised; First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or to invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such as ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.

Id. at 240 (quoting Calley v. Blake, 29 S.E.2d 634 (W. Va. 1944)). Subsequently, the Supreme Court of Appeals noted that, in recent cases, courts have stressed that in order to be considered a de facto officer, the position the person occupies

8

must have a _de jure_ existence. Id. It explained that in _Hayden_, the Civil Service Commission clearly had a _de jure_ existence insofar as its organization was made pursuant to a valid legislative enactment, but that its membership was defective inasmuch as it failed to have the proper political balance required by law. Id. Thus, the organization had a _de jure_ existence, while the appropriate individuals were not occupying _de jure_ positions within the organization. Id.

In conclusion, the court held that the members of the Civil Service Commission were not _de jure_ officers at the time they certified the list of potential appointees because they did not represent the correct political balance required by law, but were functioning under the color of authority and occupying _de jure_ offices properly created under W. Va. Code § 7-14B-1 _et seq._ Accordingly, the members were _de facto_ officers under West Virginia law and their actions were deemed to be valid.

Even if Tuggle was not a _de jure_ Executive Director at the time in question, he was, at the very least, a _de facto_ officer. Assuming, _arguendo_, that at the next available meeting, a vote by the general membership to ratify his appointment was required but not done, it appears that any such failure was the result of an inadvertent oversight. Region 4 and its employees undoubtedly operated under the assumption that

his appointment was successfully ratified, as evidenced by subsequent Minutes reflecting his replacement of Smith as Executive Director.

Further, Tuggle's position of Executive Director was clearly one of <u>de jure</u> existence, as it was established in accordance with both W. Va. Code § 8-25-6(d) and Region 4's bylaws. Insofar as the Executive Director is "empowered to appoint and remove other employees in accordance with the regional council's personnel rules" pursuant to W. Va. Code § 8-25-6(d), Tuggle was also functioning under the color of authority when he fired Price. Thus, her termination was valid.

For the foregoing reasons, it is ORDERED that the plaintiff's motion for leave be, and hereby is, granted; that the defendants' motion to strike be, and hereby is, denied; and that the plaintiff's supplemental motion for summary judgment be, and hereby is, denied.

The Clerk is requested to transmit this order to all counsel of record and any unrepresented parties.

ENTER: April 25, 2019

John T. Copenhaver, Jr.
Senior United States District Judge